T.C. Memo. 1996-496


UNITED STATES TAX COURT


JOSEPH M. AND SYBIL G. KAWAL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5850-95.                    Filed November 4, 1996.


Joseph M. Kawal, pro se.

<u>Rosemarie D. Camacho</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following defi-
ciency in, addition to, and accuracy-related penalty on petition-
ers' income tax:

| Year | Deficiency | Addition to Tax Section 6651(a)(1)[1] | Accuracy-Related Penalty Section 6662(a) |
|------|-----------|------------------------------------|----------------------------------------|
| 1992 | $14,735 | $1,335 | $2,947 |

The issues for decision are:

(1) Do petitioners have unreported income for 1992?  We hold that they do to the extent stated herein.

(2) Are petitioners liable for self-employment tax under section 1401(a)?  We hold that they are to the extent stated herein.

(3) Are petitioners liable for the addition to tax under section 6651(a)(1)?  We hold that they are to the extent stated herein.

(4) Are petitioners liable for the accuracy-related penalty under section 6662(a)?  We hold that they are to the extent stated herein.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners resided in Hollis, New York, at the time the petition was filed.

Although petitioners did not request an extension of time within which to file their Federal income tax return for 1992, they filed a joint U.S. individual income tax return for that year (1992 return) on May 24, 1993.  Petitioners reported $8,938

---

[1]  All section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

of income in their 1992 return (reported income).  The reported income consisted of $4,345 of income from petitioner Joseph M. Kawal's part-time work for Linden Lumber and Home Center (Linden Lumber), $4,568.38 of income from petitioner Sybil G. Kawal's work for Best Care Agency (Best Care), and $25 of interest income.  During 1992, Linden Lumber paid petitioner Joseph M. Kawal in cash and Best Care paid petitioner Sybil G. Kawal by check.

During 1992, petitioner Joseph M. Kawal[2] also worked part-time for Jimmy Messenger Service, Inc. (JMS), a delivery service owned and operated at all relevant times by Mr. Jimmy Mahabir, a.k.a. Malcolm Mahabir (Mr. Mahabir), for which petitioner had begun working in 1990 at a time when he was an unemployed, illegal alien.  During 1992, petitioner worked for JMS 2 to 2-1/2 hours during the evenings, 5 evenings a week, took no vacations and no holidays, and earned $175 a week from JMS (JMS compensation).

During 1992, petitioners maintained a checking account at Manufacturers Hanover Bank (checking account), which was in the name of petitioner and to which petitioners had sole access. During that year, petitioners made deposits into the checking account that totaled $45,906 (bank deposits).  During 1992, petitioners did not usually deposit into the checking account any

[2]  Hereinafter, references to petitioner in the singular are to petitioner Joseph M. Kawal.

of the income that petitioner received from Linden Lumber. During that year, generally, the amounts of the deposits into the checking account varied and the timing of those deposits was neither consistent nor regular.  To illustrate, the bank statements for the checking account (bank statements) for September and October 1992 showed the following deposits:

| Date of Deposit | Amount of Deposit |
| --- | --- |
| Sept. 11, 1992 | $1,500.00 |
| Sept. 15, 1992 | 1,750.00 |
| Sept. 21, 1992 | 1,567.52 |
| Oct. 1, 1992 | 1,076.28 |
| Oct. 2, 1992 | 1,021.00 |
| Oct. 13, 1992 | 1,130.66 |
| Oct. 23, 1992 | 1,268.77 |
| Oct. 28, 1992 | 838.84 |

When petitioner began working for JMS in 1990, pursuant to an arrangement that Mr. Mahabir had with him (Mr. Mahabir's arrangement), petitioner received checks from JMS (JMS checks) in amounts that exceeded the amount of compensation to which he was entitled for his part-time work there.  Under that arrangement, in 1990 and throughout the period during which petitioner did not have a bank account, petitioner cashed the JMS checks at Linden Lumber, retained an amount equal to his JMS compensation, and used the balance (i.e., the excess of each JMS check over the amount of petitioner's JMS compensation, which excess is hereinafter referred to as Mr. Mahabir's money) for the benefit of Mr. Mahabir, his family, and/or certain of Mr. Mahabir's acquaintances by, inter alia, returning it to Mr. Mahabir and/or his

family in the form of checks or cash, paying grocery bills for which Mr. Mahabir and/or his family were, or agreed to be, responsible, and paying other people to whom Mr. Mahabir owed money. Sometime after 1990, when petitioner opened the checking account, he began depositing the JMS checks into that account, instead of cashing them at Linden Lumber. However, in all other respects, Mr. Mahabir's arrangement with petitioner continued through 1992.

When petitioner obtained a Social Security number (Social Security number) in either 1991 or 1992, he asked Mr. Mahabir to use it, but Mr. Mahabir would not do so. Around 1992 or 1993, petitioner, who was concerned that he was depositing Mr. Mahabir's money into petitioners' checking account and using it on behalf of Mr. Mahabir, his family, and/or certain of Mr. Mahabir's acquaintances and who believed that Mr. Mahabir would fire him if he refused to continue complying with Mr. Mahabir's arrangement, raised his concerns with Mr. Mahabir and informed him that he wanted to discontinue Mr. Mahabir's arrangement. At that point, Mr. Mahabir fired him.

JMS prepared a Form 1099-MISC (Form 1099) that showed that Joseph Kawal received $49,200 in nonemployee compensation from JMS during 1992. The Social Security number shown on the Form 1099 is not the Social Security number of petitioner.

OPINION

Petitioners bear the burden of proving that respondent's determinations in the notice of deficiency are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Unreported Income

The parties agree that during 1992 petitioner received compensation from JMS, which he did not report in petitioners' 1992 return, in an amount equal to at least $175 a week, or $9,100 for that year.[3] Their dispute is whether during 1992 petitioner received more than $9,100 in compensation from JMS. While acknowledging that during 1992 he received more than $9,100 from JMS, petitioner contends that the amount that he received in excess of $9,100 belonged to Mr. Mahabir and that, pursuant to Mr. Mahabir's arrangement, petitioner was required to use such excess for the benefit of Mr. Mahabir, his family, and/or certain of Mr. Mahabir's acquaintances. Respondent contends that the Form 1099, as well as petitioners' bank statements, shows that petitioner was permitted to retain for his benefit all money received from JMS during 1992.

Our resolution of this case depends upon our assessment of the credibility of the following witnesses who testified at

---

[3] Petitioners reported in their 1992 return all income received from Linden Lumber and Best Care.

trial:  Petitioner;[4] Kenny Jaimungal (Mr. Jaimungal); Mr. Mahabir; his wife, Germaine Mahabir (Mrs. Mahabir); and his son, Jason Mahabir (Jason Mahabir).  We do not question the general credibility of either petitioner or Mr. Jaimungal.  However, we have serious questions about the general credibility of Mr. Mahabir, Mrs. Mahabir, and Jason Mahabir.

We believed petitioner's testimony, and have found as facts, that during 1992 petitioner worked at JMS 2 to 2-1/2 hours during the evenings, 5 evenings a week, for which he was paid $175 a week.  Mr. Jaimungal's testimony corroborated petitioner's testimony with respect to the number of hours during 1992 that petitioner worked each evening for JMS.

We did not believe the testimony of Mr. Mahabir or his son[5] that during 1992 petitioner was required to be available to make deliveries for JMS from approximately 6 p.m. to 7 a.m. each day (i.e., he was required to be "on call").  Nor did we believe the testimony of Mr. Mahabir that petitioner was compensated in the amount of $49,200 during 1992 for being on call during those times.  In this connection, Mr. Mahabir testified that, as the owner of JMS, he typically had income of about $50,000 a year. We are incredulous that JMS paid petitioner $49,200 in compensa-

--------

[4]  Petitioner Sybil G. Kawal was present during the trial, but she did not testify.

[5]  The testimony of Mrs. Mahabir was completely evasive, vague, and unreliable.

tion during 1992, when Mr. Mahabir, the owner of JMS, had annual income from that business of only about $50,000.

If, as Mr. Mahabir and his son Jason Mahabir testified, petitioner was required during 1992 to be on call on a regular basis for 13 hours a day, 5 days a week, we presume that he would have been paid at regular intervals in equal amounts for those services.  However, petitioners' bank statements for 1992 showed that, generally, the amounts of the deposits into the checking account varied and the timing of those deposits was neither consistent nor regular.

We also note that there is documentary evidence in the record that petitioner used Mr. Mahabir's money for the benefit of Mr. Mahabir and his family.  For example, the record contains a check written by petitioner and endorsed by Mrs. Mahabir.  The record also contains two checks, each in an amount in excess of $1,000, that were payable to S&B West Indian Grocery Store and that petitioner testified, and we have found as facts, were used to pay grocery bills for which Mr. Mahabir and/or his family were, or agreed to be, responsible.

Based on the entire record before us, we find that during 1992 petitioner received compensation for his part-time work at JMS in the amount of $175 a week that petitioners did not report as compensation in their 1992 return.  Accordingly, petitioners have unreported income from JMS for 1992 of $9,100.

Self-employment Tax

Respondent determined that the income that petitioner received from JMS during 1992 is self-employment income and that petitioners are liable for self-employment tax on that income under sections 1401 and 1402. Except for the amount of compensation that petitioner received from JMS during 1992, petitioners do not contest respondent's determination under sections 1401 and 1402.

On the record before us, we find that petitioners are liable for 1992 for self-employment tax on $9,100 of income from JMS that they did not report in their 1992 return.

Section 6651(a)(1)

Respondent determined that petitioners are liable for 1992 for the addition to tax under section 6651(a)(1) for failing to file timely their 1992 return. Except for the amount of compensation that petitioner received from JMS during 1992, petitioners do not contest respondent's determination under section 6651(a)(1).

On the record before us, we find that petitioners are liable for 1992 under section 6651(a)(1) for the addition to the tax attributable to $9,100 of income from JMS that they did not report in their 1992 return.

Section 6662(a)

Respondent determined that petitioners are liable for 1992 for the accuracy-related penalty under section 6662(a) because

petitioners were negligent in failing to report petitioner's income from JMS.  Except for the amount of the compensation that petitioner received from JMS during 1992, petitioners do not contest respondent's determination under section 6662(a).

On the record before us, we find that petitioners are liable for 1992 under section 6662(a) for the accuracy-related penalty on the underpayment of tax attributable to $9,100 of income from JMS that petitioners did not report in their 1992 return.

To reflect the foregoing,

Decision will be entered

under Rule 155.